## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

_____
)
ADELMAN'S TRUCK PARTS )
CORPORATION, )
)
Plaintiff, )
v. )
)
JONES TRANSPORT and DON JONES, )
)
Defendants. )
_____)

**Case No.** 5:17-cv-2598(JRA)

## ANSWER AND COUNTERCLAIMS
## OF DEFENDANT DON JONES

Defendant Don Jones, by and through counsel, hereby answers the complaint

of Plaintiff Adelman's Truck parts Corporation ("Adelman") as follows:

1.      Defendant admits that Adelman is a corporation organized and

existing under Ohio law. Defendant is without knowledge or information sufficient

to form a belief as to the truth of each remaining allegation contained in paragraph

1 of the Complaint and therefore denies them.

2.      Defendant admits the allegations contained in paragraph 2 of the

Complaint.

1

3.     Defendant denies that the motor he purchased was a 3406E Caterpillar C-7 Motor. Defendant admits the remainder of the allegations contained in paragraph 3 of the Complaint.

4.     Defendant admits the allegations contained in paragraph 4 of the Complaint.

5.     Paragraph 5 of the Complaint consists entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendant denies each and every allegation contained in paragraph 5.

6.     Defendant admits that he paid all freight and transportation expenses for the Used Motor. As to the remaining allegations contained in response to paragraph 6, Defendant states that the Agreement, which is attached to the Complaint, speaks for itself. Moreover, paragraph 6 consists entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendant denies the remainder of the allegations contained in paragraph 6 of the Complaint.

7.     Paragraph 7 of the Complaint consists entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendant denies each and every allegation contained in paragraph 7 of the Complaint.

8.     Defendant admits the allegations contained in paragraph 8 of the Complaint.

2

9.      Paragraph 9 of the Complaint consists entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendant denies each and every allegation contained in paragraph 9 of the Complaint.

10.     Defendant admits that Plaintiff guaranteed the block and crank for 30 days. Defendant denies the remainder to the allegations contained in paragraph 10 of the Complaint.

11.     Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 11 of the Complaint and therefore denies them.

12.     Defendant denies each and every allegation contained in paragraph 12 of the Complaint.

13.     Defendant is without knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 13 of the Complaint and therefore denies them.

14.     Paragraph 14 of the Complaint consists entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendant denies each and every allegation contained in paragraph 14 of the Complaint.

15.     Defendant denies each and every allegation contained in paragraph 15 of the Complaint.

16.     Defendant denies each and every allegation contained in paragraph 16 of the Complaint.

17.     Paragraph 17 of the Complaint consists entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendant denies each and every allegation contained in paragraph 17 of the Complaint.

18.     As to the allegations contained in response to paragraph 8, Defendant states that his Counterclaims, which are listed below, speak for themselves.

19.     Paragraph 19 of the Complaint consists entirely of legal conclusions, to which no response is required. To the extent a response is required, Defendant denies each and every allegation contained in paragraph 19 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against Defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

This Court and the Courts of the State of Ohio lack personal jurisdiction over the person of Defendant Don Jones.

## COUNTERCLAIMS

### *Facts*

1.     Defendant Don Jones is a small businessman who owns and operates an independent trucking business.

4

2.      Mr. Jones's business is a sole proprietorship that does business under the fictional name of Jones Transport (i.e., Jones Transport is not a separate entity capable of being sued).

3.      At all times relevant to the events described here, Mr. Jones's business consisted of a single truck, which he drove himself.

4.      Both Mr. Jones's residence and his principal place of business are in Thomasville, North Carolina.

5.      In early October 2017, Mr. Jones found it necessary to replace the motor in his truck. Mr. Jones determined that he needed a WAX-series Caterpillar C-7 motor.

6.      On October 11, 2017, Mr. Jones placed a telephone call to Adelman's Truck Parts Corporation in Ohio. He inquired concerning the availability of a WAX-series motor, and an Adelman's employee named Billy Betz told him that one was in stock.

7.      During the same telephone call, Mr. Jones agreed to purchase the WAX motor from Adelman's for $5,000, plus $304 in shipping costs.

8.      During the same telephone call, Mr. Betz told Mr. Jones that, to complete the purchase, Mr. Jones was required to sign the standard form terms-and-conditions used by Adelman's.

9.      Later that day, Adelman's faxed a copy to Mr. Jones in North Carolina, which Mr. Jones immediately signed and faxed back to Adelman's. Mr. Jones also arranged to wire the $5,304 payment to Adelman's.

10.     A few days later, when the motor shipped to him by Adelman's arrived in North Carolina, he discovered that Adelman's had shipped a KAL motor instead of the WAX motor.

11.     The KAL is substantially different from the WAX, and did not suit Mr. Jones's purposes as well as a WAX.

12.     Mr. Jones called Adelman's to complain, but was told that any refund would be subject to a 20% restocking fee, and that Mr. Jones would have to pay to ship the motor back to Ohio.

13.     Under those terms, returning the KAL motor to Adelman's would not have left Mr. Jones with enough cash on hand to buy a WAX motor from another merchant. So, under duress, Mr. Jones instructed his mechanic to try to make the KAL motor work with his truck.

14.     While installing the motor, Mr. Jones's mechanic discovered a large piece of the No. 4 piston lying in the motor's oil pan.

15.     On information and belief, Adelman's knew that the No. 4 piston was broken before it shipped the motor to Mr. Jones.

16.     Again, Mr. Jones called Adelman's to complain *both* about the fact that Adelman's had shipped him a broken motor unsafe and unfit for commercial use, *and* about the fact that Adelman's had shipped him a different kind of motor than he had ordered in the first place.

17.     After some amount of telephone conversation between Mr. Jones and the President of Adelman's, Mr. Carl Adelman, Mr. Adelman offered to waive the

restocking fee, pay the costs of shipping the motor back to Ohio, and to refund the $5,000 purchase price.

18.   Adelman's intentionally led Mr. Jones to believe that it would sell him a WAX series motor, knowing that it had no WAX motors in stock, and intending to ship him a KAL motor instead.

19.   Mr. Jones's monetary damages resulting from this deception include the $5,000 he paid to Adelman's to purchase a WAX motor; the $304 cost to ship the motor; the $30 he spent to wire payment to Adelman's; the $2,658 his mechanic charged him to install the motor before he discovered it was broken on arrival; and the $265 he spent on gaskets and other componentry during the mechanic's attempt to install the motor.

20.   Mr. Jones is a small business person operating with small profit margins. Thus, as a result of Adelman's deception, he did not have enough cash on hand to buy a functioning WAX motor from someone else to cover for the broken KAL motor Adelman's shipped him.

21.   Therefore, because of this deception, Mr. Jones has been unable to operate his business for approximately seven months and counting.

22.   For 2017, Mr. Jones's average weekly net profit in 2017 was about $4,200.

23.   The deception perpetrated by Adelman's has destroyed Mr. Jones's business and cost him well over $100,000 in lost income, as of the date of this Answer and Counterclaims.

24.     This deception has also caused Mr. Jones and his family severe emotional distress, including constant worry over how his family will survive, and extreme anxiety.

25.     Mr. Jones, who is 70 years old, has looked for another job that would replace some of his lost income, without success.

### Count One
### Violations of the North Carolina Unfair Business Practices Law, N.C. Gen. Stat. § 75-1.1 et seq.

26.     Defendant incorporates by references the allegations of paragraphs 1 through 24 as if fully repeated here.

27.     Plaintiff's act of agreeing to sell Mr. Jones a WAX motor, with full knowledge that it had no WAX motors in stock and intention to ship Mr. Jones a KAL motor, knowing that this would place Mr. Jones in a difficult position, and hoping that he would simply accept the KAL motor, was an "unfair and deceptive act" within the meaning of N.C. Gen. Stat. § 75 75-1.1(a).

28.     Moreover, Plaintiff's act of knowingly selling Mr. Jones a motor with a dangerous mechanical problem was an "unfair and deceptive act" within the meaning of N.C. Gen. Stat. § 75 75-1.1(a).

29.     Finally, Plaintiff's acts of misrepresenting the remedies available to Mr. Jones under the sales agreement; designing and requiring Mr. Jones to sign a standard terms-and-conditions that appears to a non-lawyer to absolve Adelman's of all liability in every possible situation; and then using the terms-and-conditions to

8

try to bully Mr. Jones into submission, separately and collectively constituted "unfair and deceptive acts" within the meaning of N.C. Gen. Stat. § 75 75-1.1(a).

30.    The unfair and deceptive acts described above were in or affecting commerce.

31.    Plaintiff's unfair and deceptive acts proximately caused Mr. Jones's injuries as described above.

## Count Two
### Breach of Contract and of the Duty of Good Faith and Fair Dealing, Ohio Uniform Commercial Code, R.C. § 1301 et seq.

32.    Defendant incorporates by references the allegations of paragraphs 1 through 24 as if fully repeated here.

33.    In the alternative, Adelman's breached its contract to sell Mr. Jones a WAX series motor.

34.    Moreover, Adelman's breached its contract by shipping Mr. Jones a motor that was broken, dangerous, and unfit for any use whatsoever

35.    Mr. Jones inquired as to the possibility of replacing the non-conforming KAL motor with a conforming WAX motor – a remedy to which Mr. Jones was entitled under the sales agreement.

36.     Adelman's was unable to replace the KAL motor because it did not have a WAX motor in stock.

37.    Thus, Mr. Jones's chosen remedy failed of its essential purpose – leaving him free to seek the entire panoply of remedies allowed under the Uniform Commercial Code, including consequential damages.

<u>DEMAND FOR A JURY TRIAL</u>

Please take notice that Defendants demands a trial by jury on all claims asserted herein.

<u>DEMAND FOR JUDGMENT</u>

WHEREFORE, Defendant Don Jones prays as follows:

1.      That Plaintiff's Complaint be dismissed in its entirety;

2.      That the Court award him actual damages, treble damages, consequential damages, and punitive damages, as well as costs and a reasonable attorney fee;

3.      That the Court grant such other and further relief as the Court deems just and proper.


Dated:  Winston-Salem, N.C.                    /s/ Jonathan R. Miller
        May 3, 2018                                    Jonathan R. Miller
                                            Attorney for Defendant Don Jones
                                            Salem Community Law Office
                                            301 N. Main St., 24th Floor
                                            Winston-Salem, NC
                                            Tel: (336) 837-4437
                                            Fax: (336) 837-4436
                                            jmiller@salemcommunitylaw.com