IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ADELMAN'S TRUCK PARTS CORPORATION, | )<br>)<br>) |
| Plaintiff, | ) Case No. 5:17-cv-2598(JRA)<br>) |
| v. | )<br>) |
| JONES TRANSPORT and DON JONES, | )<br>) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, IN SUPPORT OF DEFENDANT'S REQUEST TO DEFER CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.  Introduction

Plaintiff Adelman's Truck Parts Corporation ("Adelman") has moved for summary judgment on its own declaratory judgment claim as well as Defendant Don Jones's two counterclaims – one for unfair business practices, and the other for breach of contract.[1] Adelman's *sole* argument is that the boilerplate terms-and-conditions it required Mr. Jones to sign before shipping him a motor is legal Teflon.

As explained more fully below and in the accompanying sworn Declaration of Defendant Don Jones ("Jones Decl."), Mr. Jones maintains that he was promised a

---

[1] As Adelman correctly notes in its Motion, Jones Transport, which was named as a Defendant in Adelman's Complaint, is not a separate legal entity; it is a fictional name under which Mr. Jones does business as a sole proprietor.

WAX Motor, but that Adelman shipped him a KAL Motor. Mr. Jones maintians that KAL Motors are substantially different from WAX Motors, and that the WAX Motor he received was not suited to his truck. Mr. Jones maintains that a fist-sized piece had broken off one of the Motor's pistons before he received it. Mr. Jones maintains that no reasonable person in the transportation trade would have dreamed of setting off on a cross-country job using a Motor with a piston from which a fist-sized piece had broken off. And Mr. Jones maintains that, based on his own visual inspection as well his knowledge of how internal-combustion engines work, the broken piston had already done considerable and irreparable damage to the Motor's block – which even Adelman admits was covered by a warranty. While Adelman probably disagrees with most or even all of these points, it does not argue against them for purposes of this Motion for Summary Judgment, nor can it – because those would be arguments over *facts*.

Put another way, Adleman's sole argument is that, as a matter of law, its terms-and-conditions is so cleverly drafted that it absolves Adelman of any duty whatsoever other than to deliver something resembling a motor – even if it lied through its teeth when it promised a WAX motor, and even if it knowingly shipped an engine with a piston so badly broken that no reasonable person in the trucking industry would consider using it. In short, Adelman's argument is that its Teflon term-and-conditions absolved it even of its obligation under the Uniform

Commercial Code ("UCC") of good faith,[2] which the UCC defines as "honesty in fact and the observance of reasonable commercial standards of fair dealing."[3]

If Adelman's understanding of the UCC is correct, then the upshot is that its Teflon terms-and-conditions swallows up all the disputed fact questions concerning mentioned above and examined more fully below. In other words, under Adelman's theory of the case, *the one and only issue of material fact* is whether Mr. Jones put his pen to the Teflon terms-and-conditions. Since Mr. Jones freely admits to signing the terms-and-conditions, Adelman argues, no genuine issue of material fact remains, and it is entitled to summary judgment on all claims.

But Adelman's conception of how the Uniform Commercial Code is flat-out wrong. Adelman thinks that it automatically wins this and every other possible dispute, because it was clever enough to draft the world's most bulletproof terms-and-conditions. But the truth is that not even the highest-paid lawyer working in the tallest building in New York City can draft a document that gives his client a license to lie and/or to carry on in a commercially unreasonable, because the UCC doesn't allow that – as every first-year law student learns, the UCC's obligation of good faith cannot be waived.[4]

---

[2] ORC 1301.304 (U.C.C. 1-304).
[3] ORC 1301.201(B)(20) (U.C.C. 1-201)
[4] *See* ORC 1301.302 (U.C.C. 1-302) ("The obligations of good faith, diligence reasonableness, and care prescribed by Chapter 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., or 1310 of the Revised Code may not be disclaimed by agreement.")

Certainly, the UCC allows parties to agree to limit their exposure in ways that are commercially reasonable. For example, contractual limitations on remedies are permitted;[5] just as important, however – and just as relevant to this case – the UCC includes rules that ensure that limitation-of-remedies clauses are not abused.[6] Freely bargained-for contractual provisions that enable parties to reasonably manage its risk is one thing, but a contract that works as one party's get-out-of-jail-free card is quite another. The UCC permits and even encourages the former but, contrary to the arguments in Adelman's Motion, it prohibits the latter. For these reasons and the reasons that follow, Defendant respectfully requests that the Court reject Adelman's grotesque caricature of the UCC, as well as its Motion for Summary Judgment.

## II. Legal Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . . If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it; . . . allow time to obtain affidavits or declarations or to take discovery; or . . . issue any other appropriate order."[7]

---

[5] ORC 1302.93 (UCC 2-719).
[6] ORC 1302.93(C) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."), ORC 1302.93(B) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code.")
[7] Fed. R. Civ. P. 56(a), (d).

4

"No genuine dispute of material fact exists where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. . . . Ultimately the court evaluates whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. . . . The court must draw all reasonable inferences in favor of the nonmoving party."[8] "After the parties have presented the evidence, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[9]

### III. Argument

#### A. The Applicable Law

This case arises from a contract to purchase a Motor, which is a "good" as defined by R.C. § 1302.01(A)(8), U.C.C. § 2-105(1); thus, formation, performance, and enforcement of the contract are governed by Article 2 of the U.C.C.[10]

The party's dealings are also governed by North Carolina's Unfair and Deceptive Trade Practices Act,[11] which provides that "[u]nfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce, are . . . unlawful."[12] Any person injured by a NC UDTPA

---

[8] *Shreve v. Franklin Co.*, 743 F.3d 126, 131-32 (6th Cir. 2014) (internal citations and quotation marks omitted).
[9] *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008) (internal citation and quotation marks omitted).
[10] *See* R.C. § 1302.02, U.C.C. 2-102.
[11] N.C. Gen. Stat. § 75-1.1 *et seq.* ("NC UDTPA").
[12] N.C. Gen. Stat § 75-1.1(a).

violation, or anyone whose business has been broken up, destroyed or injured by a NC UDTPA violation, has a private cause of action for treble damages,[13] plus, in the discretion of the court, a reasonable attorney fee.[14]

    The NC UDTPA's reach is not limited to consumer transactions. A plaintiff is not required to demonstrate as an element of his case that he is a consumer or that the transaction at issue was a consumer transaction – in contrast with, for example, the federal Fair Debt Collection Practices Act.[15] The Supreme Court of North Carolina has unequivocally stated that it has "not limited the applicability of N.C.G.S. § 75-1.1 to cases involving consumers only."[16] Even assuming that the NC UDTPA was enacted primarily to benefit consumers, that would not mean that the statute covers only consumer transactions; rather, § 75-1.1 applies wherever there is a "business relationship that can be policed for the benefit of the consuming

---

[13] *See* N.C. Gen. Stat. § 75-16.
[14] *See* N.C. Gen. Stat. § 75-16.1.
[15] *See* 15 U.S.C. § 1692a(5) (limiting FDCPA's coverage to debts arising out of transactions "for personal, family, or household purposes").
[16] *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988) (citing to *Olivetti v. Ames Business Systems, Inc.*, 319 N.C. 534, 356 S.E. 2d 578 (1987); *Harrington Mfg. Co., Inc. v. Powell Mfg. Co., Inc.*, 38 N.C. App. 393, 248 S.E.2d 739 (1978)).

public."[17] In any case, reported decisions in § 75-1.1 cases involving disputes between two businesses are legion.[18]

Courts outside of the state of North Carolina regularly apply the NC UDTPA, provided that the alleged violation "substantially affected business activity in North Carolina . . . ."[19]

A claim brought under the NC UDTPA is in the nature of a tort claim, not a contractual claim. This means that a choice-of-law clause providing that contract provisions will be construed under the law of a state other than North Carolina does not preclude a NC UDTPA claim. In *ITCO Corp. v. Michelin Tire Corp.*,[20] the Fourth Circuit considered a NC UDTPA in light of a contractual provision stipulating that the parties' agreement would be "construed in accordance with the

---

[17] *Oxley v. Asplundh Tree Expert Co.*, No. 1:06cv60, 2006 U.S. Dist. LEXIS 42092, at *13-14 (May 16, 2006) (internal quotation marks and citation omitted). *See also Harrison Agency, Inc. v. Pacific Mut. Life Ins. Co.*, 703 F. Supp. 441 (W.D.N.C. 1989) (declining to enter summary judgment following defendants' argument that § 75-1.1 "applies only injuries felt by consumers not injuries felt by other businesses.").

[18] *See, e.g., Krawiec v. Manly*, 370 N.C. 602, 811 S.E.2d 542 (2018) (trade secret dispute between two for-profit dance studios); *Beverage Systems of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 784 S.E.2d 457 (2016); *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 366 N.C. 505, 742 S.E.2d 781 (2013); *White v. Thompson*, 364 N.C. 47, 691 S.E.2d 676 (2010) (dispute between business partners); *Charles Vernon Floyd, Jr. & Sons, Inc. v. Cape Fear Farm Credit, ACA*, 350 N.C. 47, 510 S.E.2d 156 (1999); *Penguin Restoration, Inc. v. Nationwide Mutual Insurance Co.*, No. 5:13-CV-63(BO), 2014 U.S. LEXIS 22836 (E.D.N.C. Feb. 24, 2014).

[19] *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 Fed. Appx. 559, 566 (2d Cir. 2006) (unpublished) (citing to *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 587, 603-04 (S.D.N.Y. 2005)). *See also In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 848-49 (N.D. Ill. 2002); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 47 F. Supp. 2d 523, 537 (D.N.J. 1999).

[20] 722 F.2d 42 (4th Cir. 1983).

7

laws of the State of New York."[21] The Fourth Circuit held, because a NC UDTPA claim is more like a tort claim than a contract claim, the contractual choice-of-law provision did not apply – in other words, the liability alleged in the NC UDTPA claim was predicated on actions that were separate and distinct from the contract.[22] Similar results have been reached in other cases.[23]

### B. Defendant's Theory of the Case

Defendant's theory of the case is as follows:

- As explained more fully in the accompanying Declaration of Don Jones, Adelman breached its non-disclaimable duty of good faith under the U.C.C., either by lying to Mr. Jones when it promised to sell him a WAX motor, or by intentionally concealing the fact that it intended to send him a KAL motor by omitting the motor's serial number from its Sales Order.[24]

---

[21] *Id.* at 49.
[22] *Id.*
[23] *See, e.g., United Va. Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 339 S.E.2d 90 (1986); *Edmondson v. American Motorcycle Association, Inc.*, 54 F. Supp. 2d 544 (W.D.N.C. 1999), *aff'd in part, vacated in part & remanded*, 2001 U.S. App. LEXIS 1506 (4th Cir. Feb. 2, 2001); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 958 F. Supp. 1087 (W.D.N.C. 1997); *Snap Products, Inc. v. IQ Holdings, Inc.*, 1996 U.S. Dist. LEXIS 10159 (M.D.N.C. May 23, 1996); *A. Jorrdan Med., Inc. v. Medtronic, Inc.*, 1994 U.S. Dist. LEXIS 19792 (M.D.N.C. Dec. 6, 1994); *United Dominion Indus. v. Overhead Door Corp.*, 762 F. Supp. 126 (W.D.N.C. 1991)
[24] *See also* ORC 1302.05 ("Terms . . . which are otherwise set forth in a writing intended by the parties as a final expression of their agreement . . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement, *but may be explained or supplemented . . . by evidence of consistent additional terms . . . .*" In his sworn testimony, Mr. Jones states that he had a contemporaneous oral agreement to purchase, not just a C7 Motor, but a particular type of C7 Motor. Thus, Mr. Jones is claiming that there were consistent terms in addition to the Sales Order.

8

- As explained more fully in the accompanying Declaration of Don Jones, when he discovered that Adelman had delivered a nonconforming KAL motor rather than a WAX motor, he inquired about the possibility of replacing the KAL with a WAX. Adelman replied that it did not have a WAX motor it could send Mr. Jones as a replacement. At that moment, the Sales Order's exclusive-remedies clause failed of its essential purpose, opening the door to Mr. Jones to seek all remedies available under U.C.C. Article 2.

- As explained more fully in the accompanying Declaration of Don Jones, Adelman committed an unfair and deceptive trade practice by misrepresenting Mr. Jones' rights and Adelman's duties under the Sales Order, knowing that Mr. Jones was under financial duress, in an effort to pressure him to accept the nonconforming KAL motor. Mr. Jones admits that he accepted the nonconforming motor, but only under duress, as a direct result of Adelman's unfair and deceptive acts.

- Under ORC 1302.65, the fact that Mr. Jones accepted the nonconforming motor did "not of itself impair any other remedy provided [to Mr. Jones] by sections 1302.01 to 1302.98, inclusive, of the Revised Code for non-conformity."

- After Mr. Jones's mechanic installed the motor, but before the motor was run by Mr. Jones or his mechanic, they found a problem with the motor's No. 4 piston and one of the motor's cylinder walls (part of the engine block) that was not

9

immediately obvious and difficult to discover. Mr. Jones then revoked his acceptance of the motor under ORC 1302.66.

- In addition, the problem with the cylinder wall (again, part of the block) was covered by a warranty explicitly stated in the Sales Order.

Because the theory laid out above is supported by the law, and because it involves a plethora of unresolved factual issues. Defendant respectfully asks the Court to deny Adelman's Motion for Summary Judgment in full.

Dated:   Winston-Salem, N.C.
        July 18, 2018

                              /s/ Jonathan R. Miller
                              Jonathan R. Miller
                              Defendants' Attorney
                              Salem Community Law Office
                              301 N. Main St., 24th Floor
                              Winston-Salem, NC
                              Tel: (336) 837-4437
                              Fax: (336) 837-4436
                              jmiller@salemcommunitylaw.com