IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| ADELMAN'S TRUCK PARTS CORPORATION, | ) ) ) ) |
| Plaintiff, | ) Case No. 5:17-cv-2598(JRA) ) |
| v. | ) ) |
| JONES TRANSPORT and DON JONES, | ) ) |
| Defendants. | ) ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ONLY

I. Introduction

Plaintiff Adelman's Truck Parts Corporation ("Adelman") has already moved for summary judgment on its own declaratory judgment claim as well as Defendant Don Jones's two counterclaims – one for unfair business practices, and the other for breach of contract.[1] Adelman's *sole* argument in support of its motion was that the boilerplate terms-and-conditions it required Mr. Jones to sign before shipping him a Caterpillar C-7 Motor absolved Adelman of any possible sins it may or may not have committed. Defendant has already responded to that motion.[2] Defendant now

---

[1] Jones Transport, which was named as a Defendant in Adelman's Complaint, is not a separate legal entity; it is a fictional name under which Mr. Jones does business as a sole proprietor.
[2] ECF#032.

makes his own motion for partial summary judgment, as to liability only, as to Plaintiff's declaratory judgment claim and his own counterclaims.

## II. Legal Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . ."[3]

"No genuine dispute of material fact exists where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. . . . Ultimately the court evaluates whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. . . . The court must draw all reasonable inferences in favor of the nonmoving party."[4] "After the parties have presented the evidence, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[5]

## III. Argument

### A. The Applicable Law

---

[3] Fed. R. Civ. P. 56(a).
[4] *Shreve v. Franklin Co.*, 743 F.3d 126, 131-32 (6th Cir. 2014) (internal citations and quotation marks omitted).
[5] *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008) (internal citation and quotation marks omitted).

This case arises from a contract to purchase a Motor, which is a "good" as defined by R.C. § 1302.01(A)(8), U.C.C. § 2-105(1); thus, formation, performance, and enforcement of the contract are governed by Article 2 of the U.C.C.[6]

The party's dealings are also governed by North Carolina's Unfair and Deceptive Trade Practices Act,[7] which provides that "[u]nfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce, are . . . unlawful."[8] Any person injured by a NC UDTPA violation, or anyone whose business has been broken up, destroyed or injured by a NC UDTPA violation, has a private cause of action for treble damages,[9] plus, in the discretion of the court, a reasonable attorney fee.[10]

The NC UDTPA's reach is not limited to consumer transactions. A plaintiff is not required to demonstrate as an element of his case that he is a consumer or that the transaction at issue was a consumer transaction – in contrast with, for example, the federal Fair Debt Collection Practices Act.[11] The Supreme Court of North Carolina has unequivocally stated that it has "not limited the applicability of N.C.G.S. § 75-1.1 to cases involving consumers only."[12] Even assuming that the NC

---

[6] *See* R.C. § 1302.02, U.C.C. 2-102.
[7] N.C. Gen. Stat. § 75-1.1 *et seq.* ("NC UDTPA").
[8] N.C. Gen. Stat § 75-1.1(a).
[9] *See* N.C. Gen. Stat. § 75-16.
[10] *See* N.C. Gen. Stat. § 75-16.1.
[11] *See* 15 U.S.C. § 1692a(5) (limiting FDCPA's coverage to debts arising out of transactions "for personal, family, or household purposes").
[12] *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988) (citing to *Olivetti v. Ames Business Systems, Inc.*, 319 N.C. 534, 356 S.E. 2d 578 (1987); *Harrington Mfg. Co., Inc. v. Powell Mfg. Co., Inc.*, 38 N.C. App. 393, 248 S.E.2d 739 (1978)).

UDTPA was enacted primarily to benefit consumers, that would not mean that the statute covers only consumer transactions; rather, § 75-1.1 applies wherever there is a "business relationship that can be policed for the benefit of the consuming public."[13] In any case, reported decisions in § 75-1.1 cases involving disputes between two businesses are legion.[14]

Courts outside of the state of North Carolina regularly apply the NC UDTPA, provided that the alleged violation "substantially affected business activity in North Carolina . . . ."[15]

A claim brought under the NC UDTPA is in the nature of a tort claim, not a contractual claim. This means that a choice-of-law clause providing that contract provisions will be construed under the law of a state other than North Carolina does

---

[13] *Oxley v. Asplundh Tree Expert Co.*, No. 1:06cv60, 2006 U.S. Dist. LEXIS 42092, at *13-14 (May 16, 2006) (internal quotation marks and citation omitted). *See also Harrison Agency, Inc. v. Pacific Mut. Life Ins. Co.*, 703 F. Supp. 441 (W.D.N.C. 1989) (declining to enter summary judgment following defendants' argument that § 75-1.1 "applies only injuries felt by consumers not injuries felt by other businesses.").

[14] *See, e.g., Krawiec v. Manly*, 370 N.C. 602, 811 S.E.2d 542 (2018) (trade secret dispute between two for-profit dance studios); *Beverage Systems of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 784 S.E.2d 457 (2016); *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 366 N.C. 505, 742 S.E.2d 781 (2013); *White v. Thompson*, 364 N.C. 47, 691 S.E.2d 676 (2010) (dispute between business partners); *Charles Vernon Floyd, Jr. & Sons, Inc. v. Cape Fear Farm Credit, ACA*, 350 N.C. 47, 510 S.E.2d 156 (1999); *Penguin Restoration, Inc. v. Nationwide Mutual Insurance Co.*, No. 5:13-CV-63(BO), 2014 U.S. Dist. LEXIS 22836 (E.D.N.C. Feb. 24, 2014).

[15] *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 Fed. Appx. 559, 566 (2d Cir. 2006) (unpublished) (citing to *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 587, 603-04 (S.D.N.Y. 2005)). *See also In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 848-49 (N.D. Ill. 2002); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 47 F. Supp. 2d 523, 537 (D.N.J. 1999).

not preclude a NC UDTPA claim. In *ITCO Corp. v. Michelin Tire Corp.*,[16] the Fourth Circuit considered a NC UDTPA in light of a contractual provision stipulating that the parties' agreement would be "construed in accordance with the laws of the State of New York."[17] The Fourth Circuit held, because a NC UDTPA claim is more like a tort claim than a contract claim, the contractual choice-of-law provision did not apply – in other words, the liability alleged in the NC UDTPA claim was predicated on actions that were separate and distinct from the contract.[18] Similar results have been reached in other cases.[19]

### B. Defendant Sought to Purchase – and Plaintiff Agreed to Sell – a Caterpillar C-7 Motor Capable of 250 horsepower.

Under R.C. § 1302.05,

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by course of performance, course of dealing, or usage of trade as provided in section 1301.303 of the Revised Code . . . ."

---

[16] 722 F.2d 42 (4th Cir. 1983).
[17] *Id.* at 49.
[18] *Id.*
[19] *See, e.g., United Va. Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 339 S.E.2d 90 (1986); *Edmondson v. American Motorcycle Association, Inc.*, 54 F. Supp. 2d 544 (W.D.N.C. 1999), *aff'd in part, vacated in part & remanded*, 2001 U.S. App. LEXIS 1506 (4th Cir. Feb. 2, 2001); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 958 F. Supp. 1087 (W.D.N.C. 1997); *Snap Products, Inc. v. IQ Holdings, Inc.*, 1996 U.S. Dist. LEXIS 10159 (M.D.N.C. May 23, 1996); *A. Jorrdan Med., Inc. v. Medtronic, Inc.*, 1994 U.S. Dist. LEXIS 19792 (M.D.N.C. Dec. 6, 1994); *United Dominion Indus. v. Overhead Door Corp.*, 762 F. Supp. 126 (W.D.N.C. 1991)

5

R.C. § 1301.303(C) defines "usage of trade" as "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage must be proved as facts."

Mr. Jones, who has several years' worth of experience managing an auto salvage yard, as well as a lifetime of experience working in the world of trucks and automobiles, has testified as to the customary trade practices in the auto salvage industry. He testifies that, when a customer is looking for a part, it is customary to ask the customer for the serial number of the part the customer is seeking to replace; the serial number enables the salvage yard to ascertain whether it has an equivalent part in stock.[20]

When he called Adelman to inquire as to the availability of motors, Mr. Jones gave Billy Betz, Adelman's sales person, the serial number of the motor he was seeking to replace.[21] The motor that Mr. Jones was seeking to replace was a Caterpillar C-7 motor capable of 250 horsepower.[22] Thus, when Mr. Betz said, "I've got exactly what you need," he was offering to sell Mr. Jones a Caterpillar C-7 motor capable of 250 horsepower. Mr. Jones accepted that offer and performed his part of the bargain by wiring payment to Adelman's bank account. But as more fully explained Mr. Jones's Declaration, Adelman delivered a Caterpillar C-7 motor

---

[20] *See* accompanying Declaration of Defendant Don Jones ("Jones Decl."), ¶ 21-25.
[21] *Id.* at ¶ 26.
[22] *Id.* at ¶ 10.

6

capable of only 190 horsepower – a part that was *not equivalent* to the 250 horsepower Mr. Jones had told Mr. Betz he was seeking to replace.

### C. Mr. Jones Asked Adelman to Replace the Nonconforming Motor With a Conforming Motor – But Adelman Was Unable or Unwilling to Do So.

1. Several times in the course of this litigation, Adelman has made much of the "Exclusive Remedies" clause contained in the Purchase Order that Mr. Jones signed. When it has done so, it has characterized the clause – incorrectly – as limiting Mr. Jones's remedies to just one: return of the part for a refund. In fact, . In fact, the Exclusive Remedies clause reads:

> Seller shall not be liable to buyer . . . for any direct, indirect, special, incidental or consequential damages, whether based on contract, tort, or any other legal theory. Buyer's exclusive remedy relating to the goods shall be limited solely to *either* seller's return of *the purchase amount* upon seller's return of the non-conforming goods *or seller's repair, correction and/or replacement of any of the goods which are defective and/or nonconforming.*[23]

Here, Mr. Jones asked Adelman to replace the nonconforming motor with a conforming motor, and Mr. Betz told him Adelman had none.[24] When this happened, the Exclusive Remedies clause in the Purchase Order "failed of its essential purpose." While the Uniform Commercial Code permits parties to limit remedies as part of their contract, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in

---

[23] Jones Decl., **Exhibit A**, ¶ 53.
[24] *Id.* at ¶ 49, 56.

Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310 of the Revised Code."[25] The Supreme Court of Ohio has held:

> Although in most cases a limited remedy may be fair and reasonable, and satisfy the reasonable expectations of a new car purchaser, other courts and some commentators have generally recognized that when a seller is unable to fulfill its warranted obligation to effectively repair or replace defects in goods which are the subject matter of the sale, such as in the instant cause, the buyer is deprived of the benefits of the limited remedy and it therefore fails its essential purpose.[26]

In short, under Ohio law, at the moment that Mr. Betz told Mr. Jones that Adelman was unable to replace the nonconforming Motor with a conforming Motor, the Purchase Order's Exclusive Remedies clause failed of its essential purpose, opening the door to Mr. Jones to seek all remedies available under U.C.C. Article 2.

### D. Adelman Commits Unfair and Deceptive Trade Practices to Force Mr. Jones to Accept the 190 Horsepower Motor.

Mr. Betz – acting on behalf of Adelman – told Mr. Jones two lies during the telephone conversation contained on Track 2 of the Audio CD filed by Defendant in early 2018. First, Mr. Betz told Mr. Jones that the KAL61215 Motor that Adelman had shipped was capable of attaining 250 horsepower if Mr. Jones were to use the electronic control module ("ECM") that he had been using with his previous WAX51440 Motor.[27] According to Caterpillar, Inc., the company that manufactures C-7 Motors, that assertion is flat-out incorrect.[28]

---

[25] R.C. § 1302.93(B).
[26] *Goddard v. General Motors Corp.*, 60 Ohio St. 2d 41, 46 (1979).
[27] Jones Decl. at ¶ 49; Audio CD Track 2.
[28] Miller Decl., **Exhibit D**.

8

The second lie that Mr. Betz told Mr. Jones was that, under the terms and conditions of the Purchase Order Mr. Jones had signed, his only two options were to keep the KAL61215 Motor, or to return it to Adelman at his own expense for an 80% refund.[29] But this was plainly untrue; as explained above, the Exclusive Remedies clause contained in the Purchase Order included a third option that was available to Mr. Jones: "seller's repair, correction and/or replacement of any of the goods which are defective and/or nonconforming."[30] There is no authority for the proposition that a breaching party can choose the remedy for a breach; it is the non-breaching party who has the power to choose from among the available remedies.

Mr. Betz knew that Mr. Jones was "between a rock and a hard place" when he made this misrepresentation.[31] The effect of Mr. Betz's misrepresentations was to pressure Mr. Jones to accept the KAL61215 Motor, which he eventually did – but only under duress.

That said, under ORC 1302.65, the fact that Mr. Jones accepted the nonconforming motor did "not of itself impair any other remedy provided [to Mr. Jones] by sections 1302.01 to 1302.98, inclusive, of the Revised Code for non-conformity." And it must not be forgotten that, since Exclusive Remedies clause had already failed of its essential purpose, all of those remedies were available to Mr. Jones.

### E. Mr. Jones Justifiably Revokes Acceptance of the Motor.

---

[29] Jones Decl. at ¶ 49.
[30] Jones Decl., **Exhibit A**.
[31] Jones Decl. at ¶ 49.

After Mr. Jones's mechanic installed the motor, but before the motor was run by Mr. Jones or his mechanic, they found that a large piece of the No. 4 piston was broken off.[32] The broken piston had already caused considerable damage to the cylinder wall[33] – which is part of the engine block,[34] and thus was under an explicit warranty.[35]

Under R.C. § 1302.66(A), "The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impair its value to him if he has accept it . . . without discovery of such non conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." "A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."[36]

In the conversation contained in Track Five of the Audio CD and paragraph 66 of the Jones Decl., Mr. Jones revoked his acceptance of the motor under no uncertain terms, as he was permitted to do under ORC 1302.66.

### IV. Conclusion

Adelman breached its contract with Mr. Jones by failing to deliver a 250 horsepower Caterpillar C-7 motor, as it had promised to do. Under the terms and conditions contained in the Purchase Order, Mr. Jones had the right to demand replacement of the nonconforming 190 horsepower Motor with a conforming 250

---

[32] Jones Decl. at ¶ 62; Bryan Decl. at ¶ 9.
[33] Jones Decl. at ¶ 67-70.
[34] Jones Decl. at ¶ 70.
[35] Jones Decl., **Exhibit A**.
[36] R.C. § 1302.66(C).

10

horsepower motor – which Adelman was unable or unwilling to provide. Because the Exclusive Remedies clause failed of its essential purpose, Mr. Jones is free to seek all remedies he would otherwise be legally entitled to seek. Adelman's employee lied both about the horsepower capabilities of the KAL61215 Motor and about Mr. Jones's contractual rights, committing unfair and deceptive trade practices. For these reasons, Defendant respectfully asks this Court to deny Plaintiff's declaratory judgment claim, and to enter partial summary judgment, as to liability only, on Defendant's breach of contract and unfair trade practices claims. Defendant further respectfully asks that this case be set down for a trial to determine the amount of Mr. Jones's damages.

Dated:  Winston-Salem, N.C.
        November 27, 2018

/s/ Jonathan R. Miller
Jonathan R. Miller
Defendant's Attorney
Salem Community Law Office
301 N. Main St., 24th Floor
Winston-Salem, NC
Tel: (336) 837-4437
Fax: (336) 837-4436
jmiller@salemcommunitylaw.com