# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| ADELMAN'S TRUCK PARTS CORPORATION,<br><br>      Plaintiff,<br>v.<br><br>JONES TRANSPORT and DON JONES,<br><br>      Defendants. | Case No. 5:17-cv-2598(JRA) |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1. Defendant Don Jones is a small business owner who operated a trucking company as a sole proprietorship for seven years, up until October 2017. Declaration of Defendant Don Jones in Support of Motion for Partial Summary Judgment ("Jones Decl."), ¶ 3, 4.

2. As part of his trucking business, Mr. Jones regularly hauled payloads of 56,000 pounds from the Eastern Seaboard, across the Blue Ridge Mountains, to the Midwest. Jones Decl., ¶ 4, 13.

3. Mr. Jones managed a salvage yard in Florida from the late 1970s to through the early 1980s, and is familiar with the standard practices of the auto salvage trade. Jones Decl., ¶ 8.

1

4. Mr. Jones decided to replace the motor in his truck around the beginning of October 2017. Jones Decl., ¶ 10.

5. The motor that had been in Mr. Jones's truck – that is, the motor Mr. Jones set out to replace – was a Caterpillar C-7 Motor, serial number WAX51440, and was capable of 250 horsepower. Jones Decl., ¶ 10.

6. In his professional judgment, based on many years of experience in the trucking industry and dealing with automobiles in general, Mr. Jones concluded that he needed to buy a 250 horsepower motor to haul his payloads across the country in a safe and effective manner. Jones Decl., ¶ 12, 13.

7. Mr. Jones first called Adelman's to make inquiries regarding purchasing a used motor on October 11, 2017. Jones Decl., ¶ 19.

8. During that telephone call, Mr. Jones spoke to Mr. Billy Betz, a salesperson who worked for Adelman's. Jones Decl., ¶ 19.

9. During that telephone call, Mr. Jones gave Mr. Betz the serial number of the motor he had been using, and stated that he wanted to purchase a used motor that would be the equivalent of the motor he had been using. Jones Decl., ¶ 20, 26.

10. Mr. Betz responded, "I've got exactly what you need." Jones Decl., ¶ 27.

11. Based on his experience both managing a salvage yard and purchasing parts from salvage yards, Mr. Jones understood Mr. Betz's words, "I've got exactly what you need," to mean that Mr. Betz was offering to sell him a Caterpillar C-7 Motor that would be the equivalent of the motor he had been using (serial number WAX51440). Jones Decl., ¶ 21-26, 28.

12. Mr. Betz told Mr. Jones that the cost of the Motor would be $5,000 plus freight, payable only by wire transfer directly to Adelman's bank account, and that Mr. Jones would have to sign a Purchase Order containing terms and conditions before the sale could be completed. Jones Decl. ¶ 29, 31, 32.

13. Mr. Jones signed and returned the Purchase Order. Jones Decl. ¶ 31.

14. A true and correct copy of the signed Purchase Order is attached to the accompanying Jones Decl. as **Exhibit A.**

15. Mr. Jones wired the sum of $5,304 directly to Adelman's bank account, as Mr. Betz had instructed. Jones Decl. ¶ 34.

16. The Motor was shipped from Adelman's and arrived at Bryans Truck Repair Inc in High Point, North Carolina on October 16, 2017. Jones Decl., ¶ 35; Bryan Decl., ¶ 4.

17. The Motor came with a Packing Slip, a true and correct copy of which is attached to the Jones Decl. as **Exhibit B**. Jones Decl. ¶ 35.

18. The serial number of the Motor shipped from Adelman's to Bryans Truck Repair was KAL61215. Jones Decl. ¶ 35.

19. Adelman's has no information concerning where the KAL61215 Motor came from before it shipped the Motor to Bryans Truck Repair. Adelman's Written Discovery Responses, Answers to Interrogatories Nos. 1-3.

20. Only three Adelman's employees came into contact with the KAL61215 Motor while it was in the possession of Adelman's: Billy Betz, Chris Ives, and Eric Burchett. Adelman's Written Discovery Responses, Answer to Interrogatory No. 5.

21. Chris Ives, who works as an "engine specialist" for Adelman's conducted the only test on the KAL61215 Motor while it was in the possession of Adelman's. Adelman's Written Discovery Responses, Answer to Interrogatory No. 4.

22. Members of the Adelman's sales staff are sometimes present when Mr. Ives tests engines; however, that is not always the case. Ives Depo. at 50.

23. Adelman's sales staff are not present when Mr. Ives tests engines when the sales staff are busy fielding sales calls. Ives Depo. at 50.

24. Mr. Ives tests an average of four to five engines per day as part of his job at Adelman's. Ives Depo. at 40.

25. Mr. Ives has worked for Adelman's for more than four years; during that time, Mr. Ives has tested thousands of engines. Ives Depo. at 9, 40.

26. Mr. Ives has no recollection of testing the KAL61215 Motor. Ives Depo. at 41.

27. When the KAL61215 Motor arrived at Bryans Truck Repair, an electronic control module, or "ECM," was attached. Jones Decl. ¶ 74.

28. In summer 2018, Mr. Jones took the ECM that had been attached to the Motor when it arrived at Bryans Truck Repair to a Carolina CAT retail location. Jones Decl. ¶ 74.

29. A Carolina CAT employee performed the standard diagnostics on the ECM and gave Mr. Jones a copy of the results, a true and correct copy of which is attached to the Jones Decl. as **Exhibit D.** Jones Decl. ¶ 74.

30. The Advertised Power of the motor with serial number KAL61215 was 190 horsepower. Jones Decl., **Exhibit D**, page 5.

31. According to Caterpillar, which manufactured both Mr. Jones's 250 horsepower WAX51440 motor and the 190 horsepower KAL61215 motor, a 190 horsepower motor cannot attain higher horsepower ratings unless hardware changes are made to the motor itself. This is so because, to create more horsepower in an engine, more fuel and more air must be delivered to each cylinder, in order to create higher cylinder pressure during combustion. Higher cylinder pressure, in turn, creates greater power. Declaration of Richard E. Bowes ("Bowes Decl."), ¶ 11-16.

32. Pairing a 190 horsepower Caterpillar C-7 Motor with an ECM designed for a 250 horsepower Caterpillar C-7 Motor will not result in 250 horsepower. Bowes Decl., ¶ 11-16.

33. A 190 horsepower motor is not the equivalent of a 250 horsepower motor.

34. Mr. Jones immediately called Mr. Betz and told him that Adelman's had sent him a 190 horsepower motor, rather than a 250 horsepower motor.

35. Thereafter, Mr. Jones called Adelman's seven additional times. True and complete recordings of these phone calls have already been submitted to this Court, as part of Mr. Jones' Reply in Further Support of His Motion to Dismiss.

36. During a telephone conversation in which Mr. Jones complained about the 190 horsepower Motor he had been sent, Mr. Betz told him the KAL61215 Motor would achieve a 250 horsepower if Mr. Jones used an ECM that had been designed for 250 horsepower. Audio CD Track Two; Jones Decl. ¶ 49.

5

37. Mr. Betz's statement that the KAL61215 Motor would achieve 250 horsepower was false.

38. During the same conversation, Mr. Betz told Mr. Jones that his only two options were to keep the KAL61215 Motor, or to pay to ship it back to Adelman's for an 80% refund. Audio CD Track Two; Jones Decl. ¶ 49.

39. The Purchase Order that Mr. Jones had signed included the following clause:

> Seller shall not be liable to buyer . . . for any direct, indirect, special, incidental or consequential damages, whether based on contract, tort, or any other legal theory. Buyer's exclusive remedy relating to the goods shall be limited solely to *either* seller's return of *the purchase amount* upon seller's return of the non-conforming goods *or seller's repair, correction and/or replacement of any of the goods which are defective and/or nonconforming*.

(Emphasis added.) Jones Decl. **Exhibit A**, ¶ 53.

40. Mr. Betz's statement that Mr. Jones's options were limited to keeping the KAL61215 Motor or returning it for an 80% refund was false, as the Purchase Order's "Exclusive Remedies" clause gave Mr. Jones the option of obtaining a replacement for the KAL61215 Motor.

41. During the same conversation, Mr. Jones told Mr. Betz that a choice between those two options put him "between a rock and a hard place." Mr. Betz replied, "I understand." Audio CD Track Two; Jones Decl., ¶ 49.

42. During the same conversation, Mr. Betz told Mr. Jones that Adelman's did not have any 250 horsepower WAX motors in stock. Audio CD Track Two; Jones Decl., ¶ 49.

6

43. Lee Bryan installed the KAL61215 Motor into Mr. Jones's truck. Jones Decl., ¶ 60, 62.

44. After he had installed the Motor, but before anyone had run the Motor inside of Mr. Jones's truck, Mr. Bryan removed the oil pan from the Motor. Jones Decl., ¶ 62; Bryan Decl., ¶ 9.

45. Inside the oil pan, Mr. Bryan found a large broken-off piece of the No. 4 piston, measuring several inches across. Jones Decl. ¶ 63; Bryan Decl., ¶ 10.

46. According to Caterpillar, the manufacturer of the KAL61215 Motor, running such a motor with a broken piston is likely to result in catastrophic engine damage. Bowes Decl., ¶ 19.

47. No reasonable driver in the trucking industry would have set off with a large load on a cross-country trip, knowing that a piece several inches across had broken off one of the pistons. Jones Decl., ¶ 65.

48. The broken piston had already caused considerable scoring to the cylinder wall of the KAL61215 Motor. Jones Decl., ¶ 67-68.

49. When a motor's cylinder wall becomes scored, it is difficult or impossible for the motor to maintain the oil pressure and hold in the compression necessary to make the engine go. Jones Decl., ¶ 69.

50. Once a cylinder wall becomes scored, it is only a matter of time before the engine fails, because as the broken piston continues to scrape against the cylinder wall thousands of times per minute, the scoring only gets worse. Jones Decl., ¶ 70.

51. The cylinder wall is part of the engine block. Jones Decl., ¶ 70.

52. The Purchase Order signed by Mr. Jones contained an explicit warranty guaranteeing the engine block and crank for 30 days. Jones Decl., **Exhibit A**.

53. According to Caterpillar, all C-7 motors are "parent bore design," meaning that that the cylinders are bored into cast iron blocks, and no liners are used. Bowes Decl., ¶ 17.

54. As a result of the circumstances described above, Mr. Jones' business has been destroyed and he has suffered considerable emotional distress, among other damages. Jones Decl., ¶ 75-78.

Dated: Winston-Salem, NC
December 4, 2018

By: /s/Jonathan R. Miller
Jonathan R. Miller
Attorney for Defendant Don Jones