IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ADELMAN'S TRUCK PARTS CORPORATION, <br><br> Plaintiff, <br> v. <br><br> JONES TRANSPORT and DON JONES, <br><br> Defendants. | Case No. 5:17-cv-2598(JRA) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ONLY**

I. Introduction

Remarkably, there are no issues of material fact in this UCC Article 2 commercial dispute. This is *not* a case of he-said, she said or, more literally, merchant-said, purchaser-said. Plaintiff Adelman's Truck Parts Corproration ("Adelman") has already moved for summary judgment on the sole basis that Defendant Don Jones signed a boilerplate terms-and-conditions that acts as Adelman's get-out-of-jail-free card – and Mr. Jones admits that he signed the terms and conditions. Mr. Jones, on the other hand, has moved for summary judgment on the basis that he and Adelman's agent agreed to an additional term that did not appear in the terms-and-conditions but which was entirely consistent with it – that is, that Adelman would ship a Caterpillar C-7 Motor that was the equivalent (in

1

terms of horsepower and otherwise) of the motor that Mr. Jones was attempting to replace. Mr. Jones has offered sworn testimony as to the content of the conversation during which the additional consistent term was added, but, notably, Adelman has not offered sworn testimony that contradicts Mr. Jones's testimony. Thus, there are no disagreements as to the facts that either side considers to be material; Plaintiff and Defendant offer only dueling legal theories. For this reason, it is unnecessary to conduct a trial, at least on the issue of liability,[1] and it is appropriate to grant one side or the other summary judgment.

While Adelman does not offer admissible evidence to contradict Mr. Jones's account of the key conversation between himself and Mr. Betz during which the additional consistent term was established, Adelman does argue that Mr. Jones's account constitutes inadmissible hearsay. But as explained further below, Mr. Jones's account of the phone conversation is not hearsay; Mr. Jones himself was a participant in the phone conversation, so of course he is competent to offer first-hand testimony as to what was said. (Mr. Jones is not introducing his account of what Mr. Betz said in order to prove the *truth* of Mr. Betz's statement; rather, Mr. Jones is only seeking to establish Mr. Betz uttered certain words in Mr. Jones's own hearing. The former would be hearsay; the latter is most certainly not.)

Adelman also argues that Mr. Jones's Motion for Partial Summary Judgment must fail because only Ohio law applies, which, Adelman argues, would knock out

---

[1] If Mr. Jones's Motion for Partial Summary Judgment as to Liability Only is granted, then a trial on the issue of Mr. Jones's damages will be necessary.

Mr. Jones's claims under the North Carolina's Unfair and Deceptive Trade Practices Act ("NC UDTPA").[2] As explained below, the case law does not bear this out and, moreover, even if Adelman's argument is correct, Mr. Jones still states a breach of contract claim under Ohio's Uniform Commercial Code.

Finally, Adelman takes issue with Mr. Jones's request to file his opening memorandum in support of his Motion for Partial Summary Judgment nine hours late – that is, at the beginning of the next business day following the day that the Motion was due – as well as Mr. Jones's request to supplement his Motion the week after it was filed with a sworn Declaration from Caterpillar, Inc. ("CAT"). But, as explained below, these criticisms ring hollow, because Adelman does not even attempt to show how it has been or will be prejudiced by the late-filled memorandum or the supplemental CAT Declaration.

For these reasons and the reasons that follow, Defendant Don Jones respectfully asks the Court to deny Plaintiff's Motion for Summary Judgment, to grant Mr. Jones's Motion for Partial Summary Judgment as to liability only, to set a date for a trial to determine Mr. Jones's damages, and for such other and further relief which as to this Court may seem appropriate.

> II. **Mr. Jones's sworn testimony concerning his conversation with Adelman salesperson Billy Betz is both admissible and material to the issue of the parties' contract.**

Adelman's contention that Mr. Jones's sworn testimony as to what Mr. Betz said during the initial phone call between the two is simply wrong. The Federal

---

[2] N.C. Gen. Stat. § 75-1.1 *et seq.*

Rules of Evidence define "hearsay" as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence *to prove the truth of the matter asserted in the statement.*"[3] At issue is Mr. Jones's sworn testimony that, during his initial phone call to Adelman, after telling Mr. Betz the serial number of the CAT C7 Motor that he was trying to replace, Mr. Betz replied, "I've got exactly what you need."

But the point of introducing this statement from Mr. Betz is *not* to prove that, in fact, Adelman had in stock a certain motor that would exactly suit Mr. Jones's needs. Indeed, whether or not Adelman had such a motor in stock is irrelevant to Mr. Jones's legal theory. The only thing that matters is *what* Mr. Betz said, because it is what Mr. Betz (and Mr. Jones) said during the telephone conversation that determines the content of the contract. Whether Adelman, in fact, had such a motor in stock is irrelevant to whether a contract was formed and what the content of that contract was.

As the note on Rule 801(c) from the Advisory Committee on Rules points out, "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." "A contract is a type of verbal act to which the law attaches duties and liabilities. . . Consequently, a contract has independent legal significance and is not hearsay."[4] One of the leading cases on this subject, *Mueller v. Abdnor* – in which the

---

[3] Fed. R. Evid. 801(c).
[4] *Padilla v. United States*, 58 Fed. Cl. 585, 593 (2003), *quoting Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992) (internal quotation marks omitted).

Eighth Circuit Court of Appeals admitted correspondence from an attorney "discussing changes in [a] contract's terms and conditions," where it was "offered to show the making of the contract" – has been cited favorably by district courts in this Circuit in similar situations.[5] The bottom line is that, if there was a telephone conversation in which additional consistent terms were discussed, then a description of that conversation is no more hearsay than the Purchase Order containing Adelman's boilerplate terms-and-conditions.

As already explained in Mr. Jones's opening brief in support of this Motion, under the Ohio Uniform Commercial Code, parties are specifically allowed to offer evidence of additional contract terms, even if there is "a writing intended by the parties as a final expression of their agreement," provided that those additional terms "explain" or "supplement" rather than "contradict" the writing.[6] Here, Mr. Jones has offered admissible evidence showing that he told Mr. Betz the serial number of the motor he was seeking to replace, that Mr. Betz replied, "I've got exactly what you need," and that, under usages of trade with which Mr. Jones was intimately familiar, Mr. Betz's reply signaled that Adelman had and would him a motor that was equivalent in all respects (including horsepower) to the one Mr. Jones's was trying to replace. Because Adelman has not offered a shred of admissible evidence that contradicts any of those points, there is no factual dispute.

---

[5] *See Lower Town Project, LLC v. Lawyers Title Ins. Corp.*, 2012 U.S. Dist. LEXIS 27270 at *20-21 (E.D. Mich. Feb. 29, 2012); *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1135 (W.D. Mich. 1996).
[6] *See* R.C. § 1302.05.

It follows that the Court should conclude that the additional consistent terms were part of the contract entered into by Mr. Jones and Adelman.

### III. North Carolina's Unfair and Deceptive Trade Practice Act applies.

Adelman's discussion of why the NC UDTPA does not apply to the case at hand is misleading in several respects. First, it argues that the Purchase Order's choice-of-law provision is "broadly written regarding **any** disputes or other legal proceedings that relate in any way to the Motor. It [the choice-of-law provision] is not limited to just remedies for breach of contract."[7] But of course, this is not so. The Purchase Order states, "This Purchase Order shall be governed by and construed in accordance with the laws of the State of Ohio," period. The expansive language to which Adelman points – "any claims, disputes and/or other legal proceedings" – is not part of the choice-of-law provision, but of the venue-selection provision.

The upshot is that only the Purchase Order itself, and not is necessarily subject to Ohio law. The leading case in this Circuit is *Moses v. Business Card Express*.[8] In that case, a party that was seeking to avoid a contract argued that its fraud and misrepresentation claims were not covered by a contractual choice-of-law provision that read, "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan." The Sixth Circuit held that the fraud and misrepresentation claims were covered by that language. In

---

[7] *See* ECF#40 at 2.
[8] 929 F.2d 1131, 1139-40 (6th Cir. 1991).

its analysis, the Sixth Circuit cited, but distinguished, a case called *Caton v. Leach* in which the Fifth Circuit had held that the language, "[T]his agreement shall be construed under the laws of the State of California," did *not* cover tort claims.[9]

Of course, the language at issue here, "This Purchase Order shall be governed by and construed in accordance with the laws of the State of Ohio," is difference from the language in either *Moses* or *Caton*. In *Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC*,[10] the Eastern District of Michigan found itself in a similar situation when it was forced to evaluate the following language: "This Agreement is governed by the laws of the State of Texas."[11] Applying *Moses*, the district court held that the language did *not* cove tort claims.[12]

Faced with a choice-of-law provision extremely similar to the one at issue here, the Eastern District of Michigan in *Live Cryo* held that the language did *not* cover tort claims. Adelman's opposition puts great weight on the Southern District of Ohio case of *Concheck v. Barcroft*.[13] But the fact is that the language of the choice-of-law provision at issue in *Concheck* was radically different from the language at issue here. The *Concheck* choice-of-law provision read: "Any and all legal issues will be through the State of Michigan and will follow the laws and guidelines of the State of Michigan."[14] It is impossible to read the words, "any and

---

[9] *See Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir. 1990).
[10] 2017 U.S. Dist. LEXIS 149850 (E.D. Mich. Sept. 15, 2017).
[11] *Id.* at *10.
[12] *Id.* at *13.
[13] 2011 U.S. Dist. LEXIS 88964 (S.D. Ohio August 2, 2011).
[14] *Id.* at *3-4.

all legal issues" as excluding anything, including tort claims; therefore, the *Concheck* court correctly determined that the party's tort claims were covered by the choice-of-law provision. But the *Live Cryo* court was also correct. Since the language of the choice-of-law provision at issue here is extremely similar to the language analyzed in *Live Cryo* and radically different from the language analyzed in *Concheck*, Defendant respectfully submits that this Court should follow its sister district's application of *Moses* and hold that Adelman's choice-of-law provision does not cover tort claims (or, as pertinent here, statutory claims in the nature of tort claims).

All that said, even if this Court were to decide that the NC UDTPA does not apply, Mr. Jones still has access to all the available remedies under the Ohio Uniform Commercial Code, as already explaining in Mr. Jones's opening brief. While those remedies would not include treble damages or attorney fees, they would include Mr. Jones's incidental and consequential damages.[15]

### IV. Defendant asks that the Court, in its discretion, accept his late-filed Memorandum and allow him to supplement his Motion for Partial Summary Judgment with the CAT Declaration.

Defendant's attorney admittedly filed the opening memorandum in support of Defendant's Motion for Partial Summary Judgment nine hours after the deadline to file the Motion had passed. (Plaintiff states that the entire Motion was filed late but, as can be seen from the Court's ECF system's bounce, the bulk of the Motion, including all Declarations and Defendant's Statement of Undisputed Facts, were all

---

[15] *See.* R.C. § 1302.89.

filed the day of the deadline, November 26, 2018.) When Defendant's attorney filed the memorandum at 9:01 a.m. the day after the deadline, he also filed a motion *nunc pro tunc* that the memorandum be accepted as timely filed. Adelman has opposed that motion.

     Defendant does not dispute that the Court's deadlines serve an important purpose and that they are not to be taken lightly. That said, Defendant also respectfully submits that his attorney's neglect was unintentional, that the late filing did not prejudice Plaintiff in any way, and that the late filing will have no affect on successive deadlines.

     Here, Defendant's failure to file the memorandum on time was due mainly to the fact that a deadline to respond to a motion in one of his attorney's state court matters was unexpectedly set for the same day as the dispositive motion deadline in this case, November 26. In North Carolina state court, the deadline to serve opposition to a motion is usually determined, not by a judge's scheduling order, but by the date for which the motion has been noticed. While Defendant's attorney asked his opposing counsel in the state court matter to adjourn the date for the motion, opposing counsel in that matter refused to do so. Unfortunately, the State of North Carolina does not use an electronic filing system in most of its trial courts, so Defendant's attorney was left without immediate recourse for opposing counsel's refusal to grant the accommodation.

     Moreover, November 26 was Defendant's attorney's first day back in the office from a cross-country road trip to visit relatives for the Thanksgiving holiday.

9

As Defendant's attorney is a solo practitioner without any support staff, there were several urgent matters awaiting his attention when he arrived back in his office. Defendant's attorney failed to ask the Court for a one-day extension before the close of business on November 26 because, at that point, he was optimistic that he could complete the Motion before midnight. Unfortunately, that proved impossible. While none of these facts excuse the fact that Defendant served his memorandum nine hours late, they do demonstrate that the late filing was not motivated by any improper purpose.

Plaintiff, in its opposition, does not claim that it was prejudiced in any way by the late filing. Indeed, Plaintiff filed its memorandum in opposition to the Motion for Partial Summary Judgment on December 17, nine days before its deadline. That Plaintiff filed its opposition several days early demonstrates that its ability to respond to the Motion was in no way affected by the fact that Defendant's memorandum was filed nine hours late.

As for the proposed supplemental CAT Declaration, again, Plaintiff does not venture explanation as to how it has been prejudiced by allowing the supplement. While Defendant would have preferred to have submitted the CAT Declaration at the time it filed its Motion, his hands were somewhat tied by the fact that he could not ultimately control the actions of one of the world's largest corporations. Plaintiff has submitted admissible evidence contradicting any of the claims in the CAT Declaration, nor has it argued that it could do so, given more time. Under these circumstances, Defendant respectfully submits that it would be inefficient for the

10

Court to disregard the CAT Declaration. If the Declaration's contents are undisputed, and if Defendant's Motion can be decided on the basis of facts contained in the Declaration, than it is in the best interests of the Court, the parties, and CAT for the Court to do so. After all, it will be much more expensive and time-consuming to conduct a trial – and to compel CAT's attendance at that trial – than it will be simply to accept the CAT Declaration now.

For these reasons, Defendant Don Jones respectfully asks the Court to deny Plaintiff's Motion for Summary Judgment, to grant Mr. Jones's Motion for Partial Summary Judgment as to liability only, to set a date for a trial to determine Mr. Jones's damages, and for such other and further relief which as to this Court may seem appropriate.

Dated: Winston-Salem, N.C.
December 31, 2018

/s/ Jonathan R. Miller
Jonathan R. Miller
Defendant's Attorney
Salem Community Law Office
301 N. Main St., 24th Floor
Winston-Salem, NC
Tel: (336) 837-4437
Fax: (336) 837-4436
jmiller@salemcommunitylaw.com