UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| Adelman's Truck Parts Corporation, | ) | CASE NO. 5:17CV2598 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Jones Transport, et al., | ) ) | (Resolves Doc. 24, 30, 36, 38, and 39) |
| Defendants. | ) ) | |

Pending before the Court are motions for summary judgment filed by both sides of this litigation. Docs. 30 and 36. Additionally, Defendants have move for an extension of time to file their motion for summary judgment. Doc. 38. The motion is GRANTED. Defendants also moved for leave to supplement their motion for summary judgment. Doc. 39. That motion is also granted. Plaintiff's prior motion for entry of default (Doc. 24) is DENIED. With both motions for summary judgment fully briefed, the Court now GRANTS Plaintiff's motion (Doc. 30) and DENIES Defendants' motion (Doc. 36).

**I. Facts & Procedure**

The parties have spent a considerable amount of time and resources to brief and argue a simplistic fact pattern. Defendants agreed to purchase a motor from Plaintiff. Specifically, Defendants agreed to pay $5000 for a used Caterpillar C-7 Motor and an additional $304 for freight charges. Following receipt of the engine, the parties' disagreement began. Defendants, in their counterclaims, contend that the parties negotiated for the sale of a WAX series motor, but that Plaintiff instead delivered a KAL series motor. In their counterclaim, Defendants asserted that the

"KAL is substantially different from the WAX, and did not suit Mr. Jones' purposes as well as a WAX."

Additionally, Defendants assert that following receipt of the motor and during its installation, Defendants became aware that a piston in the motor was broken. Following some discussion between the parties, Plaintiff offered to waive any restocking fee, pay the cost of shipping the motor back to Ohio, and refund the $5,000 purchase price. Defendants declined this offer, and Plaintiff file the declaratory action in this Court. Defendants responded by filing their counterclaims for violations of the North Carolina Unfair Business Practices Law and breach of contract.

## II. Legal Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

### III. Law and Analysis

1. North Carolina Unfair Business Practices Act

There is no dispute that Defendants signed and agreed to the terms in the sales agreement offered by Plaintiff. The terms of that agreement include the following: "This Purchase Order shall be governed by and construed in accordance with the laws of the State of Ohio." Doc. 32-2 at 4.

In cases based on diversity jurisdiction, this Court must apply Ohio's conflict of law rules when the applicable law is in dispute. *Johnson v. Ventra Group, Inc.,* 191 F.3d 732, 738 (6th Cir.1999). In cases where parties have included a choice of law provision in their contracts, Ohio courts apply § 187(2) of the Restatement (Second) of Conflict of Laws in determining what forum's law to apply. *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983). Section 187(2) provides that:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not

have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971).

There is no indication that either of the two exceptions are applicable to this case. Moreover, the Court finds the logic espoused in *Concheck v. Bancroft*, 2011 WL 3359612, at *7 (S.D.Ohio Aug. 3, 2011) to be persuasive: "Even if this provision could be interpreted as applying to only claims for breach of contract, it would still apply to … Concheck's Ohio Consumer Sales Practices Act claim, which is predicated on the allegation that the Agreement is a consumer transaction as defined by that Act." *Id.* The same holds true here as well. Defendants' unfair business practices act claim is predicated upon an argument that the sale agreement itself constituted a consumer transaction. Accordingly, the Court finds that the choice of law provision applies to all claims related to the Agreement. Defendants, therefore, cannot maintain a claim under North Carolina law.

2. Breach of Contract

In its motion for summary judgment, Plaintiff put forth evidence that it had complied with all the material terms of the sales agreement. In its later-filed motion for summary judgment, Defendants attempt to advance an entire new legal theory. The evidence offered in support of that motion makes it clear why this new theory was generated.

In support of that motion, Defendants offered a declaration from Richard Bowes, an engineering technical coordinator with Caterpillar, Inc. After noting that the KAL and WAX prefixes are related to serial numbers, Bowes stated unequivocally: "In other words, the KAL and WAX prefix C7 engines are exactly the same." Doc. 39-2 at 3. Such a statement directly undermines the statement in Defendants' counterclaim that the "KAL is substantially different from the WAX, and did not suit Mr. Jones' purposes as well as a WAX." Perhaps sensing this fault in their pleadings, Defendants instead contend that the parties contracted specifically for the sale of a Caterpillar C-7 engine capable of 250 horsepower.

This Court will not countenance such gamesmanship with pleading and motion practice. For the first time in this litigation, Defendants' motion for summary judgment has attempted to introduce usage of trade and the parties' telephone communications to create an issue of fact. Specifically, Defendants now assert that by providing the serial number of the engine that they sought to replace, the parties' agreement was transformed to specifically include a provision that the engine be capable of generating 250 horsepower. Setting aside the fact that Defendants have never pled a cause of action related to these facts, their factual allegations still fall short of creating a genuine issue of material fact.

First, the sales agreement contains no reference to the horsepower of the engine. Moreover, the written agreement expressly states that "[t]he terms and conditions contained herein (Item 1-14) shall constitute the entire and complete agreement between seller and Buyer superseding any and all oral and/or written statements[.]" Doc. 32-2 at 4. Thus, the sales agreement precludes any use of the prior, alleged oral communications to alter the agreement.

However, a more fundamental defect exists in Defendants' contract claims. Assuming *arguendo* that Defendants contracted for an engine capable of 250 horsepower *and* assuming that

Defendants' received an engine incapable of that *and/or* assuming that the engine had a defect that was subject to a warranty, the sales agreement laid out the remedies available to Defendants. Specifically, the agreement contains the following provisions:

> 1. If a seller shall provide any express warranties herein, Buyer will promptly inspect all Goods upon receipt[.] … Buyer's remedy for Seller's breach of any foregoing warranty is limited to Seller's refund to Buyer of the Purchase Amount (subject to a 20% restock charge)… or Seller's replacement of the nonconforming Goods."

Doc. 32-2 at 4. There is no dispute that Plaintiff offered Defendants the ability to return the motor. In fact, Plaintiff offered to waive the restock charge and pay the return shipping, putting Defendants back in the position they were at the time of the purchase. Defendants declined this offer.

Defendants contend that this limitation on remedies should be inapplicable because it failed of its essential purpose. Specifically, Defendants contend that Plaintiff was unable to replace the motor with a motor capable of generating 250 horsepower. "A limited or exclusive remedy can fail of its essential purpose if it deprives the purchaser of the substantial value of its bargain, leaving the purchaser without a remedy." *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 614 (N.D. Ohio 2016). Based upon Defendants' own assertions, they cannot establish that the limited remedies clause left them without a remedy. Instead, Defendants seek to avoid the limitation on indirect and consequential damages based upon the fact that Plaintiff chose to refund the purchase price rather than offer a replacement motor. Defendants have offered no legal support for their position that a seller utilizing the refund portion of a refund or replace remedy leads to a conclusion that the limitation has failed of its essential purpose.

The record is clear that Defendants cannot maintain a breach of contract claim in this matter. Accordingly, Plaintiff is entitled to summary judgment on this claim.

3. Declaratory Judgment

Based upon the above, the Court declares the parties' rights as follows.  Plaintiff is entitled to enforce the remedies limitations contained in the parties' contract, and Defendants has shown no breach of contract by Plaintiff.

**IV. Conclusion**

Plaintiff's motion for summary judgment is granted.  Defendants' motion for summary judgment is DENIED.  Judgment on Defendants' counterclaims is hereby entered in favor of Plaintiff.  The parties' rights and obligations under the sales agreement are detailed above and will not be restated here.

       IT IS SO ORDERED.

Date: March 14, 2019        _/s/ John R Adams_
      JOHN R. ADAMS
      U.S. DISTRICT JUDGE