<pre>
 1                 UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF OHIO
 2                       EASTERN DIVISION

 3    ADELMAN'S TRUCK PARTS
      CORPORATION,                    Case No. 5:17cv2598
 4                                    Akron, Ohio
                 Plaintiff,           May 21, 2018
 5
          vs.
 6
      JONES TRANSPORT, ET AL.,
 7
                 Defendants.
 8

 9                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN R. ADAMS
10                 UNITED STATES DISTRICT JUDGE

11
                TELEPHONE CASE MANAGEMENT CONFERENCE
12

13    APPEARANCES:

14    For the Plaintiff:       John J. Rambacher
                               Winkhart, Rambacher & Griffin
15                             825 South Main Street
                               North Canton, Ohio  44720
16                             330-433-6700

17

18    For the Defendant:      Jonathan R. Miller
                              Salem Community Law Office
19                            Suite 105F
                              717 S. Marshall Street
20                            Winston-Salem, NC 27101
                              336-837-4437
21

22

23

24

25
</pre>

1

2

3    Court Reporter:           Lori Ann Callahan, RMR-CRR
                             United States District Courthouse

4                             Room 568
                             2 South Main Street

5                             Akron, Ohio  44308
                             (330) 819-8676

6

7

8

9

10    Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
  1                  P R O C E E D I N G S

  2                        -  -  -

  3          THE COURT:  Counsel, this is Judge Adams.  We're

  4   here for a case management conference.  The conference is

  5   being conducted by telephone.  There's a record being kept.

  6   There's a court reporter.  Please identify yourself by name

  7   before you speak as a record is being kept.

  8          The case caption is Adelman Truck Parts

  9   Corporation versus Jones Transport.

 10          Counsel for plaintiff, take a few moments and

 11   explain for me the plaintiff's case or the issues here

 12   before the court currently.

 13          MR. RAMBACHER:  Good afternoon, Judge.  John

 14   Rambacher for plaintiff this afternoon.

 15          The plaintiff sold a used motor to the defendant.

 16   The defendant resides and conducts business in Carolina.

 17   Plaintiff's principal place of business is Canton.

 18          THE COURT:  Sir, I am sorry.  You will need to

 19   speak a little louder.  Speak closer to the phone.

 20          MR. RAMBACHER:  Is this better?

 21          THE COURT:  Just a moment.  We will try to turn

 22   the volume up here.  Just a moment.

 23          MR. RAMBACHER:  Okay.

 24          THE COURT:  That's better.  Go ahead.

 25          MR. RAMBACHER:  Very well.
</pre>

14:37:09  (line 5)
14:37:24  (line 10)
14:37:39  (line 15)
14:37:57  (line 20)
14:38:08  (line 25)

1          The motor was shipped FOB plaintiff's place of

2     business in Canton to the defendant in Carolina.  The motor

3     I believe was a $5,000 motor purchase.  As I said, it's a

4     used motor.  It's warrantied only to run.  There is an

14:38:30  5     agreement of sale that's prepared under the Uniform

6     Commercial Code Article 2 in Ohio, and it has a limitation

7     of remedies, limitation of warranties.  It's warrantied only

8     to run.

9          THE COURT:  The motor is specified in the

14:38:50  10    agreement, the very specific motor?

11         MR. RAMBACHER:  There's a specific motor specified

12    in the agreement, that is correct.

13         The defendant received the motor, had ample

14    opportunity to inspect the motor, attempted to install and

14:39:08  15    did install the motor in the defendant's truck.  It didn't

16    work well for the defendant.  The defendant subsequently

17    called plaintiff and basically plaintiff did not believe

18    there was a breach relative to the sale of the motor, but in

19    any event, the limitation of remedies expressed within the

14:39:31  20    contract limits it to return to plaintiff, which plaintiff

21    was willing to do, even though we believe the engine used --

22    motor was as warrantied.

23         THE COURT:  What was the cost of shipping?

24         MR. RAMBACHER:  About I believe it was $400 is the

14:39:53  25    freight cost.

LORI A. CALLAHAN, RMR, CRR      (330) 252-6022

1        THE COURT:  So is that essentially your claim?

2    You're seeking the return of the -- not return the motor,

3    but the return of the sale price of the motor?

4        MR. RAMBACHER:  We asked, Judge, for a declaratory

14:40:10  5    judgment, to have basically the contract, the sales

6    agreement enforced relative to limitation of the remedy

7    available to the defendant assuming the engine wasn't as

8    warrantied, and we believe it was.  The block and crank is

9    warrantied at for 30 days.

14:40:35  10        THE COURT:  What type of discovery do you wish to

11    undertake?

12        What do you need to do in terms of discovery?

13        MR. RAMBACHER:  We will do some paper discovery,

14    Your Honor.  Not a whole lot.  I don't believe we need -- we

14:40:47  15    anticipate filing a dispositive motion fairly quickly,

16    again, just to the court to enforce the agreement.

17        THE COURT:  You need to depose --

18        MR. RAMBACHER:  For the discovery --

19        THE COURT:  Depositions?

14:41:05  20        MR. RAMBACHER:  If the case is not disposed on

21    summary judgment, we would depose, of course, any expert

22    that the defendant would choose to engage.  We would also

23    have to depose Mr. Jones, the defendant, largely to inquire

24    into his business income or alleged lost income.

14:41:29  25        THE COURT:  Well, let me ask a question.  First of

LORI A. CALLAHAN, RMR, CRR        (330) 252-6022

1  all, what subjects -- what would be the subject of any

2  expert testimony or report?

3  MR. RAMBACHER:  Well, we don't anticipate in

4  engaging in experts from plaintiff's standpoint.  I don't

14:41:44  5  know what the defendant's anticipation would be.

6  All right.  Counsel for the defendant, what is

7  your position?

8  MR. MILLER:  Yes, Your Honor.  Jonathan Miller,

9  attorney for Defendant Dan Jones.

14:41:58  10  So that's right, Your Honor.  So plaintiff filed a

11  declaratory judgment action.  We included counterclaims in

12  our answer.

13  There are a couple of things -- well, we have

14  differences with a couple of things.  First of all, the

14:42:22  15  sales agreement -- it says -- the issue is the kind -- one

16  issue is the kind of motor that Mr. Jones ordered from the

17  plaintiff.  Mr. Jones ordered a WAX motor on the phone and

18  it was shipped as a KAL motor, and there are big differences

19  between the two that affects how Mr. Jones' truck actually

14:42:51  20  operates and the performance of the truck.

21  So on the original sales order that plaintiff was

22  just talking about, it says a used Caterpillar C7 motor.

23  Now, a C7 motor is kind of -- kind of like an umbrella that

24  includes both WAX motors and KAL motors, so -- so that's

14:43:19  25  right, and that's what Mr. Jones got, but Mr. Jones

1    specifically ordered and plaintiff agreed to ship a WAX

2    motor.

3            THE COURT:  Is that in the agreement somewhere?

4    Is there something -- we're talking about differences

14:43:37  5    between two motors.  What does the contract provide?  That's

6    what we're looking at here is we have a contract.

7            I assume we have an integration clause, so tell me

8    more.  If the agreement specifies a specific motor or type

9    of motor, if the plaintiff provided that motor to your

14:43:57  10    client, what's the issue there?

11            MR. MILLER:  Well, they discussed on the phone it

12    was a WAX motor that my client was ordering and my client

13    needed and then it was just stated more generally in the

14    sales order.

14:44:17  15            THE COURT:  So when your client received it, why

16    did he not just ship it back if it was nonconforming or good

17    as specified or based upon his oral conversation.

18            Why did he not ship it back?

19            MR. MILLER:  Well, Your Honor, first of all, my

14:44:35  20    client wanted -- wanted Adelman to replace the motor, and by

21    the way, this is actually the other -- the other thing that

22    plaintiff didn't mention about the sales contract so there

23    is a limitation of remedies clause, but it limits it -- it

24    limits it to two remedies.

14:44:56  25            One is replace, and the other is return and

1   refund.  And my client wanted to replace and actually get

2   the kind of motor that he contracted for, but they informed

3   him that he didn't have one.  So he tried -- he was going to

4   try to make this engine work, and it was while when they had

14:45:25   5   just about installed the motor when they realized that a

6   giant piece of one the systems had fallen off on the

7   motor inside.

8           THE COURT:  So he tried to install it even though

9   he knew that it wasn't the motor that he or at least the

14:45:44   10   specific type of motor that he had wanted, right?

11           MR. MILLER:  That's true, Your Honor.

12           THE COURT:  Again, I guess I've looked at the case

13   and I am trying to figure out, with all due respect, when

14   you've analyzed how much is at stake here, a $5,000 motor

14:46:06   15   the defendant claims it wasn't conforming.  He decided to go

16   ahead, as I am hearing today, and attempt to install it in

17   any event, knowing it wasn't the motor, at least that he

18   orally had requested, refuses then to pay for it.  Plaintiff

19   now says, "Look, pay us the money we contracted for or send

14:46:26   20   us the motor back."

21           The client is not willing to send it back, and

22   we're here in federal court where we're going to spend tens

23   of thousands of dollars probably in litigation costs over a

24   $5,000 motor.

14:46:43   25           I am saying this to both sides, because it doesn't

1    strike me that the case warrants the amount of attorneys'

2    fees that's going to be incurred and we have a writing and

3    I'm going to look at the writing.  And if it's in

4    conformance with the UCC here in Ohio, then it's going to be

14:46:57  5    tough for -- at least for the defendant.  It's going to be

6    expensive for the plaintiff.

7         So why haven't there been -- to cut to the chase,

8    why haven't there been some more discussions about settling

9    the case, because the case is going to be tried here in Ohio

14:47:19  10    if there is a trial.  It's going to be extraordinarily

11    expensive.

12         So have you had really serious discussions about

13    trying to resolve the case, to cut to the case?

14              MR. MILLER:  Your Honor --

14:47:35  15              THE COURT:  And I am sorry to interrupt.  Because

16    the more I hear about the case, then the more it strikes me

17    the case should be settled because there's going to be no

18    winners in this litigation.

19         One way or the other, no one is going to win

14:47:48  20    because of the costs, expenses and the amounts in question.

21         So, Counsel, I've looked at your pleadings.  I

22    don't see this as a consequential damage case where you are

23    going to be able to claim, based on what you've just told me

24    what the evidence is likely to be, that your client

14:48:02  25    attempting to install a motor that he admitted was not

1    conforming, now then says, "Well, now it's because of the

2    plaintiff that I've incurred all this lost income."

3        Whereas if he had simply shipped the motor back

4    rather than trying to install it, the problem would have

14:48:19  5    been a different one.

6        So go ahead.  Finish your thoughts, please.

7        MR. MILLER:  I just wanted to say a couple of

8    things.  First of all, my client did pay the price of the

9    motor.  So there's no -- there's no question about that.

14:48:37  10   Adelman required him to do a $5,000 plus, you know, whatever

11   the shipping was, required him to do a wire transfer before

12   the engine was shipped.

13       Now, the other thing that I just want to point out

14   is that when Mr. Jones received the KAL motor, they were not

14:49:05  15   at that point offering to give him a full refund.  What they

16   were -- what they were saying is that Mr. Jones would have

17   to ship back the engine at his expense and pay a 20 percent

18   handling charge.

19       And so, you know, it was basically under duress

14:49:28  20   that he was -- that he went ahead and tried to install the

21   engine, and then second of all, the piston breaking off of

22   that is really a separate issue than the issue with the type

23   of engine.

24       So anyway, with that said, Your Honor, you know,

14:49:52  25   the reason that defendant filed this declaratory action, the

LORI A. CALLAHAN, RMR, CRR          (330) 252-6022

1   declaratory judgment action in Ohio is because I sent a

2   demand letter to them asking for -- I think it was probably

3   about $16,000, even though that's off the top of my head,

4   Your Honor, and this was back in October.  And their

14:50:17   5   response was to file this declaratory judgment action to try

6   to wipe out my client's rights in a distant forum.

7           THE COURT:  All right.  Well, have you had any

8   further settlement discussions, counsel for Adelman?

9           MR. RAMBACHER:  Your Honor, my client was willing

14:50:41   10   to take the engine back, pay the freight, give a full refund

11   and that was pretty well beyond, and they're still willing

12   to do that.

13           THE COURT:  Okay.  Well, Counsel --

14           MR. MILLER:  I mean -- I'm sorry, Your Honor.

14:50:56   15           THE COURT:  Go ahead, sir.

16           MR. MILLER:  I mean, I just wanted to say that

17   that's the other thing that, you know, you have to

18   understand that my client is a small business person.  He

19   has a family he's trying to support and he operates with

14:51:13   20   very low profit margins.

21           So, you know, it's actually not true that at first

22   they were -- they said they would do a full refund.  It was

23   pay -- eat the shipping to North Carolina, pay for the

24   shipping back to Ohio, and a 20 percent handling fee.  And

14:51:31   25   my client just didn't have the money to do all that, and

1      then to go, you know, get the kind of engine that he needed.

2              I mean, this was just an impossibility.

3              THE COURT:  All right.  Well, I understand that.

4      I'm not unsympathetic to that.  I mean how much more are you

14:51:53   5   going to expend in this case and what's your likelihood of

6      success here in Ohio?  So I don't know.  Is your client

7      present?  Is he there?  Can he hear me?

8              How much money does he want to spend on this case?

9              How much are you charging him per hour, or did you

14:52:10   10  take this on a contingent basis, because we both know the

11     expense is going to be extraordinary.  You're talking about

12     experts.  How much is an expert going to charge you to give

13     some opinion?  I'm not sure this case is even one that

14     warrants an expert of any sort.

14:52:31   15          MR. MILLER:  Your Honor, it's a contingency basis.

16             THE COURT:  I'm sorry?

17             MR. MILLER:  Your Honor, to answer your questions,

18     it's a contingency fee agreement.

19             THE COURT:  Well, how much of the cost of

14:52:40   20  depositions going to be?  If you have to take a deposition

21     up here in Ohio, which sounds likely, and how much is an

22     expert going to be?  I don't know the case warrants an

23     expert based on what we know, but the expenses and the costs

24     and the travel here to Ohio is going to be thousands of

14:52:54   25  dollars.

LORI A. CALLAHAN, RMR, CRR        (330) 252-6022

1          I'm not trying to twist anybody's arm.  I'm not

2    going to mediate the case.  When I look at this case, I'm

3    saying, "Hmmm.  Does either side know exactly what it is

4    that they really want out of this litigation?  Does either

14:53:07    5    side know what the expense is going to be in this

6    litigation?  Does either side know that the results for

7    either side is not really going to solve the problem, and is

8    going to simply add to the expense," particularly if you're

9    a small business owner.

14:53:24    10         Why not quickly cut your losses, ship the motor

11   back, and be done with this.  At least in some quarters, I

12   might say, "You know, besides the costs, there's going to be

13   the expenses.  Besides the expenses, there's going to be an

14   amount of time that you're going to need to devote to this

14:53:42    15   litigation."

16         So in any event, we will go forward.  We will put

17   in place some dates and some orders with regard to how the

18   case is going to proceed by way of discovery.

19         Counsel for the defendant, what --

14:53:56    20   counter-claimant, what is it you anticipate, what discovery

21   do you anticipate in the case?

22         MR. MILLER:  Well, Your Honor, I -- a little bit

23   of paper discovery.  I agree with plaintiff that there's

24   probably not a lot of paper discovery.  But, you know, I

14:54:16    25   think, you know, the most important thing here is going to

1       get discovery from Caterpillar, which is the maker of the

2       motor who's going to testify that these are -- those are

3       completely different motors and, you know, the KAL was not

4       suitable at all for Mr. Jones' truck, and, you know, we will

14:54:43   5       also be able to testify, you know, whether Caterpillar

6       recommends driving an engine with a piece of a piston about

7       the size of a fist, you know, if they -- if that's how they

8       recommend using the motor.

9               THE COURT:  That's all well and good, but if I

14:55:01  10       understand you correctly, when your client received the

11       motor, he knew it wasn't, at least according to his version

12       of the events, yet to be determined, he knew that the motor

13       was not the series motor that he ordered, at least he orally

14       ordered, but he decided in any event to go ahead on his own

14:55:22  15       and to see if he couldn't install the motor.

16               So if there's any -- if you want to use

17       contributory negligence, comparative negligence, if you want

18       to use that theory, then he really doesn't have a claim, and

19       we're wasting our time with Caterpillar because he took a

14:55:39  20       motor that he knew what he claimed that he had ordered and

21       then attempted to use it and to his detriment, so it's not

22       really much of an issue in that respect.

23               MR. MILLER:  But, Your Honor --

24               THE COURT:  Go ahead.

14:55:55  25               MR. MILLER:  I am sorry.  I didn't mean to

1    interrupt.

2         But there really is no -- there's no connection

3    between the type of the motor issue and the piston, the

4    broken piston issue.  There's two different issues.

5         THE COURT:  I am sorry to debate with you.  How is

6    it that's two different issues, because if the motor itself

7    was not the motor that your client ordered, if the motor

8    wasn't suitable for his truck, and that if he installed it

9    or attempted to install it, and for some reason the piston

10   broke, the chain that you're trying to create makes no

11   sense.

12        The answer to the problem would have been

13   potentially and in hindsight, again, based on what you've

14   told me, would be, "Look, I got the wrong motor, not the

15   motor I wanted," recognizing the hardship to a small

16   business owner.  The problem is that he went ahead and

17   attempted to utilize it, and, yes, the motor wasn't --

18   apparently, according to what you've said, the piston broke.

19        But go back and start with the first premise.  It

20   was not the motor that you ordered, that it wasn't suitable

21   for the truck, so stop right there, because if he went ahead

22   and tried to use it and the piston broke, I know there's

23   another problem.

24        MR. MILLER:  Your Honor, just he didn't actually

25   run the engine.  The piston -- the piston fell out when they

LORI A. CALLAHAN, RMR, CRR        (330) 252-6022

1　　lifted it to put it in the truck.  They never ran the motor.

2　　It was junk on delivery.

3　　　　　THE COURT:  Well, if it was junk on delivery, why

4　　did you attempt to install it?  If it's junk on delivery,

14:57:34　5　　you return it.  Again, your theory of the case, as you've

6　　outlined it for me here, makes no sense.

7　　　　　The contract provided a specific class of motor,

8　　if I understand you correctly.  Your claim is that my client

9　　ordered a different motor within the same class and when it

14:57:53　10　　arrived, I realized and recognized it wasn't what I ordered,

11　　but I decided, because of either necessity or cost, to go

12　　ahead and attempt to use it anyway.

13　　　　　And so once he attempts to do that, you know, it

14　　doesn't matter whether Caterpillar says it wasn't a

14:58:16　15　　comparable motor or what have you.  All you're telling me is

16　　things that are going to make this litigation more

17　　difficult, more expensive, more costly.  And I don't know

18　　who the winners are in this piece of litigation.  I don't

19　　know if Mr. Jones is going to win.  That's for certain.  I

14:58:34　20　　don't know that the plaintiff is going win for whatever they

21　　are attempting to do with this declaratory judgment, whether

22　　they're going to get all that they want one way or the

23　　other.

24　　　　　So I won't go further.  We will simply litigate.

14:58:46　25　　We will litigate.  I don't know where those claims are going

1    to go.  I do know that both sides are probably going to need

2    to take depositions.  You are free to try to depose someone

3    from Caterpillar if you want.  I'm not sure that's going to

4    help you or help your cause.

14:58:57    5         We will put -- we will have motions in place,

6    motions for summary judgment I am sure on both sides, and

7    then we will decide whether we're going to have a trial.

8    And then you can all come up here and we can have a trial if

9    we need to have a trial.

14:59:18   10         Again, the reason I am saying these things, again,

11   I don't see economically this litigation making sense for

12   either side at all.

13        So anything else either side wants to tell me?

14   I'm going to put forward some dates in this case in terms of

14:59:32   15   moving the case forward.

16        Counsel for the plaintiff, anything you want to

17   add?

18        MR. RAMBACHER:  No.  Nothing more, Your Honor.

19        THE COURT:  Counsel for the defendant?

14:59:41   20        MR. RAMBACHER:  Your Honor, John Rambacher again

21   for plaintiff.

22        As I indicated, my client is prepared to have the

23   this motor shipped back, make a full refund and pay a

24   freight and be done.

14:59:56   25        THE COURT:  Maybe you need to add a little money

LORI A. CALLAHAN, RMR, CRR        (330) 252-6022

1   there to resolve any attorney fees issues that might be

2   outstanding.  I know that's not something you're required to

3   do, but you've got $5,000.  You have a motor and shipping is

4   what, total of 5,500, 6,000, thereabouts?

15:00:19   5            MR. RAMBACHER:  That's correct.

6            THE COURT:  How much money do you have in this

7   litigation already?

8            Again, sometimes -- I've been doing this for 20

9   years, state and federal.  Sometimes I don't quite get it

15:00:35   10  when you just sit down and try to do a cost benefit analysis

11  and see what are we going to benefit here?  How are we going

12  to benefit?  Who's going to benefit by litigating like this,

13  other than the attorneys?  How is the client going to

14  benefit by the time, the money and expense of litigation of

15:00:53   15  this type?  So that's up to you.  That's between you and

16  your clients.

17           We will put in place some dates.  And,

18  unfortunately, Counsel, the dates you've suggested here are,

19  with all due respect, wildly outside of what this case is

15:01:10   20  going to require.  We're not going to be deep into 2019 in

21  any stretch.  This case is going to be briefed, and we will

22  have motions by early fall.  This is not a case that

23  requires months and months.

24           So we will assign the case to a standard track.

15:01:27   25  Counsel, if you are not familiar, we have a system here

LORI A. CALLAHAN, RMR, CRR        (330) 252-6022

1    where we set goals for disposition of cases, and so 15

2    months from the date of filing is the goal to be met.  I'm

3    not sure we will meet it in this case, but that's the track

4    we will assign it to.

15:01:45   5          In terms of discovery or amendment of the

6    pleadings, you will have 30 days from today's date for any

7    amendment of the pleadings if need be without leave of

8    court.  After that, leave of court will be required.  After

9    there's a motion and, of course, any opposition before we

15:02:00  10   will allow any further amendments.

11          And all these dates will go up in a written order.

12          In terms of a discovery cutoff date in this case,

13   the discovery shouldn't take more than about four months at

14   most.  So we are in May.  We will use June 1 as a starting

15:02:16  15   date.  So all discovery in the case will be completed on or

16   before November 1 before any -- that will include any

17   experts that might be required.  Again, I don't see this is

18   a case requiring any experts.  The type of motor is

19   specified in the contract, at least the series type of

15:02:42  20   motor, I should say, so I don't know if either side wants to

21   go through the time and expense of hiring an expert.  That's

22   entirely up to you.

23          If you wish to do that, I will tell both sides to

24   be mindful of Rule 26.  Rule 26 requires the filing or the

15:02:55  25   submission of a report, a detailed report under the federal

LORI A. CALLAHAN, RMR, CRR          (330) 252-6022

1    rules, outlining the subject of the expert's report.  All

2    the details should be set forth in the report.

3            So if you wish to do that, make sure that a report

4    is filed.  That report should be submitted to opposing

15:03:14   5    counsel no later than 30 days before any scheduled

6    deposition.  So that means you're going to have to work

7    together and identify experts, submit reports and conduct

8    your depositions within that window.

9            Again, I don't think the focus here should be on

15:03:28  10    expert depositions, but that's up to you.

11            Dispositive motions in the case will be due on or

12    before November -- we will give you some time between the

13    end of discovery.  Motion practice will begin on November

14    26, which is a Monday.  Under our rules, 30 days thereafter

15:03:54  15    for a response.  And then 14 days for reply.  That will put

16    us into early January.

17            There will not be a trial date scheduled until we

18    resolve any outstanding motion practice.  We will put all

19    those dates in a written order for you so you will have

15:04:10  20    them.

21            Additionally by way of discovery, I would

22    anticipate, counsel for the plaintiff, if you wish to depose

23    Mr. Jones, that might be something that may be necessary,

24    based upon allegations of certain oral representations that

15:04:24  25    were made, and Mr. Jones may wish to depose whoever it is he

1    was dealing with here in Ohio in terms of the transaction,

2    trying to order the motor and who he spoke to.  But I leave

3    that to you, and it's entirely up to you what discovery you

4    need to undertake to bring the case to motion practice and

15:04:42    5    then thereafter for trial.

6           So that's, again, something that I leave to your

7    discretion.

8           A couple of other matters.  The local rules

9    require the filing of a status report every 45 days.  45

15:04:56    10   days from today's date, each side should file a report.  Our

11   local rules cover the subject of the status report.  And

12   please review them.  I won't go through that here this

13   afternoon.  I have another procedure here shortly.  So

14   review the local rules.  They will tell you what you need to

15:05:14    15   include in that report.

16          If there's any discovery disputes, under Rule 37.1

17   is our local rule governing those disputes.  I try to follow

18   it, and one of the most important things I can tell you now

19   is if there is any disputes or issues, I expect to hear

15:05:29    20   about them before the discovery cutoff date or well before

21   that date.  As soon as they arise, bring them to my

22   attention.  I will resolve them and I will deal with them so

23   that those matters get addressed early on.

24          Additionally, should there be any time when the

15:05:45    25   parties would like mediation, that's something you should

1    consider in this case, and then we will try to refer it to

2    mediation or some mediator that may require some costs by

3    both sides; however, I won't mediate the case, not

4    appropriate for me to do that if I am presiding over the

15:06:00  5    proceedings and rulings on motions and things of that

6    nature.  I'm not going to do that.

7              So hopefully these dates will be -- these dates

8    are, at least in my view, are reasonable based on the issues

9    in the case.

15:06:11  10              If at some point you are able to resolve the

11    matter, please let me know as quickly as we can so we can

12    adjust our schedules if need be.

13              Otherwise, we will proceed in the fashion I've

14    just indicated.

15:06:25  15              Counsel for the plaintiff, do you have any

16    questions at all?

17              MR. RAMBACHER:  No, I do not.

18              THE COURT:  Counsel for the defendant, do you have

19    any questions?

15:06:36  20              MR. MILLER:  No, Your Honor.

21              THE COURT:  All right.  Work together.  Begin your

22    discovery as soon as possible.  We will look forward to

23    seeing motions, and then we will schedule a date if need be

24    for a status after all the discovery has been completed so

15:06:49  25    we can decide on a trial date if necessary, at least have a

LORI A. CALLAHAN, RMR, CRR       (330) 252-6022

1    date to work against.

2             If you have any problems or issues, let me know as

3    quickly as we can and my clerk, his name is Jonathan, is

4    assigned to the case.  He will be tracking it, and we will

15:07:02    5    work, again, once you move the case forward.

6             Thank you very much for being available by phone.

7             And the next time we meet, we may require all

8    parties to be present.  Sometimes that's beneficial in

9    working towards a settlement.  So we will address that issue

15:07:14   10    at a later time.

11             Thank you very much.  Have a good afternoon.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.

6

7

8                    s/Lori A. Callahan
                     Lori Ann Callahan, RMR-CRR
9                    U.S. District Court, Suite 568
                     2 South Main Street
10                   Akron, Ohio  44308
                     (330) 252-6022
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                LORI A. CALLAHAN, RMR, CRR        (330) 252-6022